186 

BUFFALO POLICE BENEVOLENT ASSOCIATION, INC., et al., Respondents, v CITY OF BUFFALO et al., Appellants.

Fourth Department, February 20, 1981

APPEARANCES OF COUNSEL

*Joseph P. McNamara, Corporation Counsel (Anthony C. Vaccaro* of counsel), for appellants.

*Sargent & Repka, P. C. (Nicholas J. Sargent* of counsel), for respondents.

OPINION OF THE COURT

MOULE, J.

Two questions are presented on this appeal: first, whether there was jurisdiction to grant a preliminary injunction after the matter had been submitted to the Public Employment Relations Board and, second, whether sufficient grounds were established for the issuance of a preliminary injunction.

The members of the Buffalo Police Department have for many years worked on the following shift basis: either working 8:00 A.M. to 4:00 P.M. on consecutive days, re-

ferred to as the day shift, or working midnight to 8:00 A.M. and 4:00 P.M. to midnight the same day, with the next day off, referred to as the rotating shift.

In early 1980, during collective bargaining negotiations between the City of Buffalo (City) and the Buffalo Police Benevolent Association (PBA), the interpretation of a provision of the parties' current contract came into dispute. The provision, located in the article entitled "Hours of Work", provided in pertinent part: "Except for emergency situations, as declared by the Commissioner of Police, work shift schedules shall not be changed by the Commissioner of Police unless the changes are mutually agreed upon." The City sought to remove this language from the successor agreement, arguing that it dealt with a nonmandatory subject of negotiation. The PBA demanded a continuation of the language and insisted on negotiation to retain it, contending that such a demand merely related to hours of work and, consequently, was a mandatory subject of bargaining.

On March 31, 1980 the City filed an improper practice charge alleging that the PBA violated the Taylor Law by submitting this issue to compulsory binding arbitration. The hearing officer decided that the PBA violated its duty to negotiate in good faith with the City by submitting this demand concerning work shift schedules to arbitration. The holding was that the PBA's demand to negotiate this article compromised the City's right to determine the number of police on duty at any given time; that this right is a management prerogative and, as such, is a nonmandatory subject of negotiation (*Matter of Buffalo Police Benevolent Assn. & City of Buffalo*, 13 PERB 4591 [No. 4547]).

The PBA filed an exception to the hearing officer's decision with the Public Employment Relations Board (PERB). On October 31, 1980 PERB affirmed the decision of the hearing officer and ordered the PBA to negotiate in good faith by withdrawing its demand for a continuation of the language. It held that the demand, if granted, would interfere with the City's management prerogative to determine the number of policemen who should be on duty at a specific time; therefore, the demand was not a mandatory

subject of negotiation *(Matter of Buffalo Police Benevolent Assn. & City of Buffalo,* 13 PERB 3134 [No. 3084]).

On November 4, 1980 the PBA wrote to the Deputy Chairman of PERB, who was not on the panel that decided *Matter of Buffalo Police Benevolent Assn. & City of Buffalo* (13 PERB 3134 [No. 3084]), to ask his opinion in connection with the decision. Specifically, the PBA pointed out that the assignment of a different number of employees to one or another time would mean a change in the affected employees' hours of work, and that hours of work constitutes a mandatory subject of negotiations. Accordingly, the PBA asked what survived of its right to demand negotiations of changes in hours of working. The deputy chairman responded:

"It is my opinion that, except for emergency situations, the City must give PBA reasonable notice of changes in its manpower needs. It must then negotiate with PBA concerning the hours of work of employees so long as PBA's proposals satisfy the City's manpower needs. If there is no agreement as of the time when the new manpower allocations are to take effect, the City may then take unilateral action and implement its preferred solution to the problem. It must, however, continue to negotiate as to whether its preferred solution, PBA's preferred solution, or some compromise, should be incorporated into the agreement * * *

"Nothing that I have written, of course, should suggest any particular settlement or solution to the problem of the City's manpower needs."

The PBA contends that on November 21, 1980 it wrote to the Commissioner of Police, quoting the letter from the deputy chairman, requesting notice of change in work schedules, and stating that it was available to negotiate any change. It claims that no reply was received. The City contends that it received a copy of the deputy chairman's letter and called him in Albany to discuss it, and that he informed the City that the contents of the letter were binding on no one and were merely his opinion.

On December 16, 1980, the Commissioner of Police issued General Order No. 80-38 which eliminated the rotating shift work schedule by assigning officers to fixed shifts

corresponding to the levels of demand for police service. The new working schedule provided that the night shift would work a fixed schedule from midnight to 8:00 A.M.; that the day shift would work a fixed schedule from 8:00 A.M. to 4:00 P.M.; and that the evening shift would work a fixed schedule from 4:00 P.M. to midnight.

The PBA responded to the order by filing an improper practice charge with PERB alleging that the City failed and refused to negotiate a change in the hours of employment. Furthermore, on December 22, 1980, by order to show cause, the PBA applied in Supreme Court, Erie County, for a preliminary injunction prohibiting the City from implementing the order. In its accompanying papers the PBA included a copy of the deputy chairman's letter and affidavits of five Buffalo Police Department officers whose hours of employment would be altered by the change to a steady shift. The affidavits predict stress on family life should the officers be switched from their present shift to one of the proposed ones.

Special Term, on December 31, 1980, granted PBA's application and ordered that a preliminary injunction be granted for 70 days; that PBA file a $5,000 surety bond to secure payment for any damages awarded by reason of the granting of the preliminary injunction; and that the court would retain jurisdiction of the matter to be available to take care of urgent matters during the pendency of this action or resolve disputes between the parties which require immediate treatment. The City appeals from the order, contending that the grounds for a preliminary injunction have not been established.

The first question on appeal is whether the court had jurisdiction to grant the preliminary injunction where the matter had previously been submitted to the Public Employment Relations Board for a determination.

Section 205 (subd 5, par [d]) of the Civil Service Law expressly grants PERB "exclusive nondelegable jurisdiction" to establish procedures for the prevention of improper employer labor practices, including a refusal to negotiate in good faith *(Matter of Zuckerman v Board of Educ.*, 44 NY2d 336; *Matter of Jefferson County Bd. of Supervisors*

v New York State Public Employment Relations Bd., 36 NY2d 534). Clearly, by denying the courts such judicial power, the Legislature intended an administrative and not a judicial approach to the problems of improper public employment practices; therefore, the courts should not interfere in such matters by imposing alternative remedies (Matter of Board of Co-op. Educ. Servs. of Rockland County v New York State Public Employment Relations Bd., 50 AD2d 832, mod on other grounds 41 NY2d 753).

The policy of judicial noninterference extends to the granting of a preliminary injunction, unless an underlying action exists whereby a court may obtain the necessary statutory authority to grant a preliminary injunction (Wilcox v Jefferson County Ind. Dev. Agency, 73 AD2d 1062; Matter of Board of Co-op. Educ. Servs. of Rockland County v New York State Public Employment Relations Bd., supra; CPLR 6301). However, the statutory scheme for granting a preliminary injunction does not contemplate or authorize doing so where the underlying "action" is an unfair labor practice within the primary jurisdiction of the labor board, commenced in addition to proceedings before the board (Matter of Corbin v County of Suffolk, 54 AD2d 698; Davis v Hogan, 273 App Div 745). Where jurisdiction of a labor relations board has been invoked, no action in equity should be entertained which would disturb or interfere with the subject matter of the proceeding before or within the jurisdiction of the board, unless an ancillary action is necessary to protect the jurisdiction of the board which has the matter under consideration, or the board is not vested with the general power to grant the relief sought (Zuckerman v Board of Educ., supra; Matter of Jefferson County Bd. of Supervisors v New York State Public Employment Relations Bd., supra; Domanick v Triboro Coach Corp., 259 App Div 657).

The only cause of action stated by the PBA's complaint is one for an injunction against implementation of the change in shift schedules, while PERB considers the allegation that the City refused to negotiate in good faith. There was no showing that the preliminary injunction was necessary to protect the invoked jurisdiction of PERB. Therefore, the underlying action is within the exclusive juris-

diction of PERB, and the court should not have interfered by granting the preliminary injunction.

The second question on appeal is whether the grounds for a preliminary injunction have been established and, in view of our holding that the court lacked jurisdiction, we do not pass upon it.

The order granting the preliminary injunction should be reversed and the application denied.

SIMONS, J. P., HANCOCK, JR., DOERR and DENMAN, JJ., concur.

Order unanimously reversed, without costs, and application denied.